UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RAYMOND JAMES HUFAULT,

    Plaintiff,

v.                                                               Case No. 5:21-cv-526-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the opinion of Suniti Barua, Ph.D., an impartial medical expert.[2] As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1981, claimed disability beginning May 1, 2018, which he later amended to March 15, 2019 (Tr. 39, 148). He was 38 years old on the

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).
[2] In the decision, the ALJ refers to Dr. Barua as Dr. Kukreja-Barua (Tr. 15-30). Because the rest of the evidence in the record refers to the doctor as Dr. Barua and because the parties likewise refer to the doctor as Dr. Barua in their briefs, the doctor will be referred to as Dr. Barua herein.

amended alleged onset date. Plaintiff obtained at least a high school education, and his past relevant work experience included work as a heat/air conditioner servicer, anti-tank assault gunner, and small products assembler (Tr. 56, 177). Plaintiff alleged disability due to post-traumatic stress disorder (PTSD), bipolar disorder, depression, anxiety, flashbacks, and hypervigilance (Tr. 176).

Given his alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 148-49). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 60-103). Plaintiff then requested an administrative hearing (Tr. 107-08). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 36-59). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-35).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 15, 2019, the amended alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: knee disorder with left anterior cruciate ligament (ACL) tear and repair; depression; anxiety; PTSD; and polysubstance abuse disorder (Tr. 18). Notably, the ALJ concluded that, including Plaintiff's substance use, the severity of Plaintiff's PTSD met the criteria of Section 12.15 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).[3] The ALJ further

---

[3] The Listing of Impairments describes, for each of the major body systems, impairments considered severe enough to prevent an individual from doing any gainful activity, regardless

found that, if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities, and, thus, Plaintiff would have a severe impairment or combination of impairments (Tr. 21).  Notwithstanding the noted impairments, the ALJ determined that, if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21).  The ALJ then determined that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following exceptions: lifting and carrying 20 pounds occasionally and 10 pounds frequently; pushing/pulling as much as he can lift/carry; sitting for six hours; standing for six hours; walking for six hours; occasionally operating foot controls bilaterally; frequently climbing ramps and stairs, balancing, and stooping; occasionally kneeling, crouching, and crawling; never climbing ladders, ropes, or

---

of age, education, or work experience.  20 C.F.R. § 404.1525(a).  The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary and thus require an impairment preventing an adult from performing *any* gainful activity rather than just substantial gainful activity.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001).  Indeed, conditions found in the Listings are "irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform her past relevant work or any other jobs."  *Richardson v. Apfel*, 44 F. Supp. 2d 1264, 1265 (M.D. Fla. 1998) (citations omitted).  To demonstrate that an impairment meets a Listing, the impairment must meet all of the specified medical criteria.  *Sullivan*, 493 U.S. at 530.  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.* (footnote omitted).  A diagnosis alone cannot meet the criteria required to establish that an impairment meets a Listing.  20 C.F.R. § 404.1525(d).  To "meet" a Listing, therefore, a claimant must have a diagnosis included in the Listings as well as medical reports documenting that the condition meets both the specific criteria of the Listings and the duration requirement.  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*per curiam*); *see* 20 C.F.R. § 404.1525.

scaffolds; working in moderate noise; frequently working at unprotected heights and around moving mechanical parts; performing simple, routine, repetitive tasks that are not production-rate pace (*e.g.*, assembly-line work); making simple work-related decisions; and occasionally interacting with supervisors, coworkers, and the public (Tr. 22-23).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23, 26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 28).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner/housekeeper, a bottle line attendant, and a collator operator (Tr. 29, 57-58).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 30).  In doing so, the ALJ found that the substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use, and, consequently, because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff had not been disabled within the meaning of the Social Security Act at any time from

the amended alleged onset date through the date of the decision (Tr. 30).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-11, 146-47).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

    II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P,

5

Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for

determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson*, 284 F.3d at 1221 (citations omitted).

 III. *Discussion*

Plaintiff solely argues that the ALJ erred by failing to properly consider the opinion of Dr. Barua as to the issue of whether Plaintiff would meet a Listing if he stopped his substance use. Under the regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R.

§ 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[4] 20 C.F.R. § 404.1520c(b)(2).

Here, shortly after the administrative hearing, Dr. Barua submitted a Medical Statement of Ability to do Work-Related Activities (Mental) form and responses to medical interrogatories at the request of the ALJ (Tr. 15, 1680-89, 1704-06, 1707-11). The form asked Dr. Barua to provide a professional opinion of what Plaintiff could still do despite his impairments and to base such opinion on findings with respect to medical history, clinical and laboratory findings, diagnosis, prescribed treatment and

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

responses, and prognosis (Tr. 1704). Based upon on review of the records, Dr. Barua concluded that Plaintiff experienced mild limitations in his ability to understand and remember simple instructions and moderate limitations in his ability to carry out simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions (Tr. 1704).[5] Dr. Barua determined that Plaintiff experienced marked limitations in the ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 1705). Given such limitations, Dr. Barua indicated that Plaintiff could not manage benefits in his own best interest (Tr. 1706). Notably, the penultimate question on the form asked: "If the claimant's impairment(s) include alcohol and/or substance abuse, do these impairments contribute to any of the claimant's limitations as set forth above? If so, please identify and explain what changes you would make to your answers if the claimant was totally

---

[5] The form included the following definitions for the rating terms:

- None – Able to function in this area independently, appropriately, effectively, and on a sustained basis.
- Mild – Functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
- Moderate – Functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
- Marked – Functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
- Extreme – Unable to function in this area independently, appropriately, effectively, and on a sustained basis.

(Tr. 1704).

abstinent from alcohol and/or substance use/abuse." (Tr. 1705). In response, Dr. Barua stated that Plaintiff's "[p]olysubstance use likely exacerbates symptoms and prevents expected recovery/stability" (Tr. 1705).

Dr. Barua also responded to the medical interrogatories provided by the ALJ (Tr. 1707-11). Based on review of extensive treatment notes from Veterans Affairs (VA) treatment facilities (Tr. 324-1257, 1275-1678), Dr. Barua found that, since 2015, Plaintiff suffered from the impairments of depressive/bipolar disorder and trauma/stress-related disorder, both of which met a Listing based upon Plaintiff's symptoms of hypervigilance, nightmares, startle response, paranoia, anxiety, racing thoughts, crying spells, lack of appetite, disturbed sleep, and low frustration tolerance (Tr. 1707, 1709). Dr. Barua determined that Plaintiff's impairments were serious and persistent because there was a medically documented history of the existence of the disorders over a period of at least two years and evidence both of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that was ongoing and that diminished the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment, meaning that Plaintiff had minimal capacity to adapt to changes in his environment or to demands that were not already part of his daily life (Tr. 1710). In support of that determination, Dr. Barua cited to Plaintiff's continued need for treatment and the chronic nature of Plaintiff's condition (Tr. 1710). Given Plaintiff's impairments and symptoms, Dr. Barua concluded that, in a work setting, Plaintiff would experience moderate limitations in his ability to adapt or manage himself and to understand, remember, or apply information and would experience

marked limitations in interacting with others and in concentrating, persisting, or maintaining pace (Tr. 1708).

Following receipt of Dr. Barua's responses, the ALJ issued the decision finding Plaintiff not disabled, in which the ALJ discussed and considered Dr. Barua's opinion at length (Tr. 18-20, 23, 26-27).  As noted, at step three of the sequential evaluation process, the ALJ found that, including Plaintiff's substance abuse, the severity of Plaintiff's PTSD met the criteria of Section 12.15 of 20 C.F.R. Part 4040, Subpart P, Appendix 1.  In doing so, the ALJ found that Plaintiff satisfied the "paragraph A" criteria because Plaintiff had "medical documentation of exposure to actual or threatened death, serious injury, or violence secondary to military service, subsequent nightmares, hypervigilance, disturbance in mood, and increase in arousal and reactivity, including startle response, paranoia, hypervigilance, anxiety, racing thoughts, crying spells, no appetite, and low frustration tolerance" (Tr. 18).[6] The ALJ

---

[6] The Listing 12.15 criteria are as follows and may be satisfied by A and B, or A and C:

   A. Medical documentation of all of the following:
   1. Exposure to actual or threatened death, serious injury, or violence;
   2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
   3. Avoidance of external reminders of the event;
   4. Disturbance in mood and behavior; and
   5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

   AND

   B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
   1. Understand, remember, or apply information (see 12.00E1).
   2. Interact with others (see 12.00E2).

then found that Plaintiff also satisfied the "paragraph B" criteria because Plaintiff's impairments caused a moderate limitation in understanding, remembering, or applying information; a marked limitation in interacting with others; a marked limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself (Tr. 19). In support of those findings, the ALJ cited to Dr. Barua's opinion, stating that he was persuaded by the opinion because it was internally supported by references to the medical evidence and consistent therewith; Dr. Barua had the opportunity to review the entirety of the record; Dr. Barua was an impartial medical expert with significant pertinent credentials, including a doctorate degree in clinical psychology; and the medical evidence both supported and was consistent with Dr. Barua's opinion (Tr. 19).

Indeed, as the ALJ thoroughly discussed, the medical evidence both prior to and after the amended alleged onset date confirmed a history of multiple psychological

---

      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.15.

hospitalizations and issues, including chronic PTSD and substance abuse of stimulants, alcohol, and cannabis (Tr. 19-20, 55, 327-30, 369-420, 463-74, 504-05, 510-16, 523-27, 539-41, 569-985, 1007-1060, 1065-66, 1275-1339, 1369-74, 1378-83). As detailed by the ALJ, the evidence also showed that some hospitalizations coincided with and symptoms were exacerbated by substance use, including alcohol, cannabis, and other controlled substances. (Tr. 19-20, 55, 327-30, 369-420, 463-74, 504-05, 510-16, 523-27, 539-41, 569-985, 1007-1060, 1065-66, 1275-1339, 1369-74, 1378-83). As a result, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms were generally consistent with the evidence when the substance use was included (Tr. 20). In reaching that conclusion, the ALJ reiterated that he was very persuaded by Dr. Barua's "impartial expert medical opinion that the severity of [Plaintiff's] PTSD meets the 'paragraph A' and 'paragraph B' criteria of Listing 12.15 when considered in combination with his polysubstance abuse disorder" (Tr. 20).

As indicated above, the ALJ next concluded that, if Plaintiff stopped the substance use, Plaintiff would still have a severe impairment or combination of impairments, but those impairments would not meet or medically equal one of the Listings (Tr. 21-22). Consequently, the ALJ continued in the sequential evaluation process, determining that Plaintiff retained the RFC to perform a reduced range of light work (Tr. 22-28). In determining the RFC, the ALJ discussed the medical

evidence relating to Plaintiff's mental and physical impairments, including Dr. Barua's opinion, specifically stating:

> At the outset, I reiterate that the medical evidence supports finding that if the claimant were to stop using substances, he would continue to have severe psychological impairments, as well as a severe knee impairment, although they would not result in disabling symptoms or limitations.
>
> This finding is supported by the opinion of Dr. Kukreja-Barua, an impartial medical expert, that polysubstance abuse exacerbated the claimant's psychologically based symptoms and prevented expected recovery and stability. Again, this opinion is well-supported by and consistent with the medical evidence, which shows that the claimant reported less symptoms, sought less intensive treatment, reported medication efficacy, and performed relatively unremarkably on mental status examinations coinciding with the times that he reported abstinence from substance use.
>
> ***
>
> As discussed above, the impartial medical expert, Dr. []Barua, opined that the severity of the claimant's mental impairments including the substance abuse met a listing due to the presence of psychological symptoms and marked limitations in his ability to interact with others and concentrate, persist, or maintain pace. Again, as discussed above, I find this persuasive in finding that the claimant's impairments including substance abuse meet a listing. However, Dr. [Barua] also found that the claimant's polysubstance use exacerbated the severity of the claimant's mental health symptoms and prevented expected recovery and stability. I find Dr. []Barua's opinion persuasive in finding that in the absence of polysubstance abuse, the claimant would not be disabled. This opinion is supported by Dr. []Barua's review of the medical evidence and is consistent with this evidence. Specifically, as discussed above, during the claimant's periods of abstinence from substance use, he reported less severe symptoms, had no involuntary psychiatric hospitalizations, and exhibited no significant deficits or abnormalities on mental status examinations with only some persistent mood and social symptoms.

(Tr. 23, 26-27) (internal citation omitted).

Plaintiff now argues that the ALJ erred in his consideration of Dr. Barua's opinion at both steps three and four of the sequential evaluation process (Doc. 22). Mainly, Plaintiff contends the ALJ erred by finding that (1) Dr. Barua concluded that Plaintiff met the criteria for Listing 12.15 "when considered in combination with his polysubstance abuse disorder" and (2) if Plaintiff stopped the substance abuse, Plaintiff would not meet or equal a Listing based on Dr. Barua's opinion that polysubstance abuse exacerbated Plaintiff's psychologically based symptoms and prevented expected recovery and stability (Tr. 18, 23). As Plaintiff frames it, Dr. Barua opined that Plaintiff met the criteria for Listing 12.15 (and 12.04) regardless of substance use, and Dr. Barua's statement regarding polysubstance abuse likely exacerbating symptoms and preventing recovery and stability did not alter that opinion.

For purposes of determining disability, substance abuse cannot be a contributing factor material to a finding of disability (Tr. 18). 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535; Social Security Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013); *see Doughty v. Apfel*, 245 F.3d 1274, 1275 (11th Cir. 2001). It remains Plaintiff's burden to demonstrate that his alcoholism and drug addiction does not constitute a contributing factor material to his disability determination. *Doughty*, 245 F.3d at 1280. Where, as here, the ALJ finds that a claimant is disabled and has medical evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability by applying the following process:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(a)-(b). As the decision indicates, the ALJ conducted the required analysis regarding Plaintiff's polysubstance abuse disorder and relied heavily upon the opinion of Dr. Barua as to whether Plaintiff's polysubstance abuse disorder constituted a contributing factor material to the determination of disability (Tr 18-28, 1704-11).

In conducting the analysis, however, it is unclear whether the ALJ properly characterized Dr. Barua's opinion. The questions posed to Dr. Barua were: (1) if Plaintiff's impairments include alcohol and/or substance abuse, do these impairments contribute to any of the limitations Dr. Barua identified, and (2) if so, identify and explain what changes you would make to your answers if Plaintiff was totally abstinent from alcohol and/or substance use or abuse (Tr. 1705). Dr. Barua responded that Plaintiff's polysubstance use likely exacerbated his symptoms and prevented expected recovery and stability but did not indicate what changes would be made to the other

answers provided, including whether Plaintiff would still meet a Listing – specifically, mood/depressive/bipolar disorder (Listing 12.04) and/or trauma/stress-related disorder (Listing 12.15) – with or without the polysubstance use (Tr. 1705, 1707, 1709). The ALJ interpreted Dr. Barua's opinion in a way that supported his conclusion but perhaps not in the way that Dr. Barua intended.  Since the ALJ relied heavily upon his interpretation of Dr. Barua's opinion at steps three and four of the sequential evaluation process, it is thus unclear whether substantial evidence supports the ALJ's decision.

The evidence cited by the ALJ further calls into question the ALJ's interpretation of Dr. Barua's opinion.  For example, the ALJ pointed to a March 2020 treatment note when Plaintiff presented to the VA for psychiatric treatment following an increase in psychosocial stressors and paranoia (Tr. 20, 1379-83).  The ALJ summarized the treatment note as follows:

> More recently, in March 2020, the claimant reported current daily marijuana and alcohol use.  Coinciding with this, he reported an increase in psychosocial stressors and paranoia and possessed a restricted range of affect on examination, although his psychomotor activity, eye contact, speech, thought process, thought content, and memory remained within normal limits.

(Tr. 20).  A closer look at the treatment note reveals that the ALJ's summation does not accurately reflect the precipitating factors for the appointment nor Plaintiff's statements regarding his marijuana and alcohol use.

At that time, Plaintiff presented with complaints of "intrusive memories, nightmares ('a couple times a week'[)], flashbacks, avoidance efforts, feeling down,

anhedonia, withdrawal from others, irritability with anger outbursts, self-destructive behaviors (substance misuse-reports that he does not do this anymore), hypervigilance, exaggerated startle response, concentration difficulties, and sleep disruption" (Tr. 1380). During the appointment, Plaintiff stated that, in the previous five weeks, he experienced five deaths, including that of his father, and had a surgery postponed because he missed an appointment but, as noted, denied any recent substance misuse (Tr. 1380). Plaintiff then described his history of substance use in greater detail, indicating he smoked cigarettes daily and drank alcohol a couple times per week, if that, while acknowledging a *history* of daily alcohol use that created interpersonal difficulties (Tr. 1382). He reported current daily use of marijuana but indicated that he used it to help him relax (Tr. 1382).

In detailing his psychiatric history, Plaintiff reported approximately 10 psychiatric hospitalizations, indicating that only the most recent hospitalization in 2017, or three years prior, was due to alcohol misuse and suicidal ideation (Tr. 1380-81). Thereafter, in detailing Plaintiff's history of trauma, the practitioner noted the following:

> Veteran saw combat in Iraq in 2003 stated that he was there for 18 months and suffered physical injury's [*sic*] as well as his symptoms of PTSD. Records also indicate that pt. witnessed fellow soldiers being killed by RPGs and IEDs and having had to pick up their body parts and place them in their Humvee.

(Tr. 1381). Based on the assessment, the practitioner concluded that Plaintiff was currently experiencing significant symptoms of depression anxiety, and PTSD (Tr. 1383).

Plaintiff therefore did not report daily alcohol use nor did his increase in psychosocial stressors and paranoia coincide with any daily marijuana or alcohol use. On the contrary, Plaintiff reported a history of alcohol misuse, but his current usage involved only a couple drinks per week, at most.  Further, Plaintiff stated that his marijuana use actually helped him relax rather than exacerbated his symptoms. Finally, given his history of trauma from combat combined with the recent deaths of both family and friends, Plaintiff unsurprisingly experienced an increase in psychosocial stressors and paranoia completely unrelated to any substance use.  Based on the foregoing, the ALJ's analysis is not supported by substantial evidence. Accordingly, remand is warranted to obtain clarification as to Dr. Barua's opinion and to reevaluate Plaintiff's polysubstance abuse disorder.[7]

---

[7]  The question of the appropriate way to treat individuals confronting drug or alcohol addiction in the eyes of the law has presented itself for decades.  *See, e.g., Powell v. State of Tex.*, 392 U.S. 514, 522-31 (1968) (discussing the disagreement among medical professionals about the nature of alcoholism as a disease and as to its manifestations as well as to how to properly treat the condition even when it could not "be denied that the destructive use of alcoholic beverages is one of our principal social and public health problems"); *Robinson v. California*, 370 U.S. 660 (1962) (discussing consideration of individuals in the legal system who are considered "drug addicts" and holding that a state law which imprisoned a person simply afflicted with a narcotic addition as a criminal, even though the individual had never touched any narcotic drug within the state or been guilty of any irregular behavior there, inflicted a cruel and unusual punishment in violation of the Fourteenth Amendment).  In reaching my decision, I understand that the ALJ must operate within the confines of the Social Security Act enacted by Congress and the regulations promulgated by the SSA, including 20 C.F.R. § 404.1535, which addresses the determination of whether a claimant's drug addiction or alcoholism acts as a contributing factor material to the determination of disability.  I would note that the SSA has not updated 20 C.F.R. § 404.1535 since its promulgation in 1995.  In the more than 25 years since its promulgation, much has changed, including views regarding the use of marijuana, the treatment of alcoholism, and the effects of PTSD.  For example, studies have shown changing opinions regarding the legalization of marijuana for medical and recreational use, *see* Ted Van Green, *Americans Overwhelmingly Say Marijuana Should be Legal for Medical or Recreational Use*, Pew Research Center, *https://www.pewresearch.org/fact-tank/2022/11/22/americans-overwhelmingly-say-marijuana-should-be-legal-for-medical-or-*

*IV.     Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. After consideration, it is hereby

ORDERED:

1.      The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.      The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of December, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record

---

*recreational-use/* (last visited December 28, 2022), and, interestingly, medical use of marijuana remains legal in the State of Florida, *see* Florida Statutes § 381.986, although it remains a federal crime to possess and/or distribute marijuana. Given such changing opinions and the growing number of states legalizing the use of marijuana for medicinal and recreational purposes, an update to the SSA's consideration of drug use and alcoholism in determining disability seems warranted. As such policy change remains within the purview of Congress and/or the SSA, I make no further comment. Upon remand, the ALJ should apply the law as it exists at the time the ALJ renders the decision in accordance with the directives set forth herein.